UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| JAMES S. HALVORSEN, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, sued as Michael J. Astrue, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 10-2251 |

# REPORT AND RECOMMENDATION

Plaintiff James S. Halvorsen filed an application for Disability Insurance Benefits in April 1998, alleging a disability onset date of April 16, 1996. Plaintiff has had multiple hearings, and his case has been remanded twice by the Appeals Council and once by this Court. In the most recent iteration, ALJ Kenneth Stewart held a hearing on February 6, 2008, at which Plaintiff and Vocational Expert Cheryl Hoiseth testified. On March 28, 2008, ALJ Stewart issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review. Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

In November 2010, Plaintiff filed a Complaint (#1) against Defendant Commissioner of Social Security. In June 2011, Plaintiff filed Plaintiff's Motion for Summary Judgment (#16). In September 2011, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#20). In October 2011, Plaintiff filed Plaintiff's Response to Defendant's Motion for Summary Judgment (#21). For the reasons discussed below, the Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#16)** be **DENIED**, and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#20)** be **GRANTED**.

# I. Background

*A. Factual Background*

Plaintiff was born on December 9, 1954, and was 47 years old as of his date last insured. He has a high school education and is single with no children. He worked as a bricklayer for 18 years, from 1978 to 1996. (R. 348). Plaintiff initially filed his claim for Disability Insurance Benefits on April 22, 1998, alleging a disability onset date of April 16, 1996.

Plaintiff is only eligible for DIB if he can demonstrate that he became disabled while he still had insured status. *See* 42 U.S.C. § 423(c)(1)(B)(I). In this case, Plaintiff's date last insured is September 30, 2001. ALJ Stewart incorrectly states that Plaintiff's date last insured is March 31, 2001. However, this error is harmless, as Plaintiff makes no claim that his condition changed between March 31 and September 30, 2001, and there is no indication that ALJ Stewart's mistake regarding the date last insured impacted his decision in any way.

*B. Procedural Background*

There have been four different ALJ opinions issued in this case. The Appeals Council remanded the first ALJ decision, dated July 2, 1999, because the recording of Plaintiff's hearing before the ALJ was lost. This Court remanded the second ALJ decision, dated January 23, 2002, holding that the ALJ had not properly articulated his reasoning supporting his determination at step three. The Appeals Council remanded the third ALJ decision, dated August 26, 2005, finding that the ALJ's RFC determination was inconsistent with the testimony of Medical Expert William Newman, M.D., (hereinafter "Dr. Newman") made at a hearing held May 18, 2005.

Finally, Plaintiff had a fourth hearing before ALJ Stewart on February 6, 2008, and ALJ Stewart issued an unfavorable decision. ALJ Stewart determined that Plaintiff has the residual functional capacity to perform the full range of sedentary work. ALJ Stewart noted that, based on this RFC finding, Medical-Vocational Rule 201.21 directed a finding of "not disabled," given Plaintiff's age, education, and work experience. ALJ Stewart's RFC determination was apparently largely based on Dr. Newman's testimony at the May 2005 hearing, as ALJ Stewart

noted: "Dr. Newman's opinion effectively limits the claimaint to sedentary work because of his inability to stand 6 of 8 hours in a workday." (R. 290).

## II. Standard

To be found eligible for social security disability insurance and supplemental income, a claimant must show that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that is expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1).

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

## III. Discussion

Plaintiff makes the following arguments supporting his motion for a remand: (1) Dr. Newman's testimony does not constitute substantial evidence upon which ALJ Stewart can appropriately rely; (2) ALJ Stewart makes unreasonable inferences from Dr. Newman's testimony; (3) ALJ Stewart did not properly weigh the opinion of Dr. Engelhard; and (4) the vocational expert testimony was superfluous, and thus does not provide an independent basis for ALJ Stewart's step-five decision. The thrust of the argument is that ALJ Stewart should have

3

given greater weight to Dr. Engelhard's opinion, and disregarded the testimony of Dr. Newman and disregarded the VE testimony, and thus should have found that Plaintiff is disabled.

*1. Dr. Newman's Testimony - Defects in Transcript Testimony*

Dr. Newman testified regarding his opinion of Plaintiff's residual functional capacity during a hearing that took place in May 2005. Plaintiff notes that the transcript of the May 2005 hearing is not an official transcript. The document in the record is an "unofficial transcript" prepared by Plaintiff's previous counsel. The document appears to have been transcribed from an audio recording, but the recording quality was such that portions of it were inaudible. Plaintiff asks the Court to hold that Dr. Newman's testimony may not constitute substantial evidence, given the flaws in the transcript, or that in the alternative, that the Commissioner be ordered to produce an official transcript. Plaintiff's counsel has indicated that he has also requested an official supplemental transcript from the Social Security Administration's Office of General Counsel. (#21, p. 2, fn. 1).[1]

The most relevant portion of the unofficial transcript is worth quoting at length, both to illustrate the defects of the transcript and to highlight the most relevant testimony of Dr. Newman. Whether ALJ Stewart drew appropriate or inappropriate inferences from Dr. Newman's testimony is the crux of both Plaintiff's and Commissioner's arguments. There are several portions in the transcript denoted with "???," apparently indicating the transcriber could not hear or understand the audio recording.

> Judge: . . . I'm going to ask you doctor, to give an opinion, if you're able to, as to the residual functional capacity. Is there sufficient information for you to give an opinion as to residual functional capacity as of the date last insured?
>
> Dr. Newman: Yes. Going back, since we have no medical evidence after '01, I have to give my opinion based on what it was then. The man said that he hasn't changed at all since then. So, based on that, the pathology demonstrated does not meet the listing. It is ??? I think that he falls somewhere in a modified, without

---

[1]Plaintiff's counsel indicates he made this request prior to October 14, 2011. It is now March 2012. Because no supplemental transcript has been filed in this lengthy interim, this Court assumes that an official transcript could not be found or produced.

treatment, without the weight loss that would be required, doctors, you know, he hasn't followed through with some of the orthopedic surgeons that suggested active treatment for his condition . . . . Weight loss, the things people try before they go into fusion, and then, with his condition, fusion would be ??? then.[2] It wouldn't allow, it wouldn't make his back normal, but it would be better on a functional level. ??? If, if the conservative measures didn't work . . . obviously he hasn't even gone through the conservative measures, chief of which, I would say, would be to lose some weight. So he has not yet ?? Treatment. I would like, before I give my opinion of what he could do, I would like to preface that in saying that with treatment he would be a lot better off. And primary treatment, the number one treatment would be to lose weight, which a person can do if they're willing to do it. The other thing that you could do with this kind of back trouble is use a corset, which will improves function because it stabilizes it. And after all of that, if a person still has ??? pain, then there's things, there's fusion. ???? And so, I don't think we should jump into fusion before we try the simple, or, not so simple, but the more conservative and less risky measure such as losing weight and using a brace. So with that said, with his disc degeneration and his obesity, it would have to be a modified light category. It would have to be quite restricted in the amount of bending that he does. He could lift, he's a larger man, he could lift probably 30 lbs. Occasionally, but not overhead, up to waist level. ?? 10 to 15 lbs. Frequently. The amount of time on his feet continuously, probably, He probably couldn't meet the six, total of six hours a day due to his obesity and the disc degeneration. The muscles that maintain posture, mainly the stomach muscles that protect the spine, fatigue after you're on your feet continuously for a long time or you sit for a long time. And then, there's a certain amount of movement that takes place because the protective muscle tone is gone after you fatigue. So he is limited. I would say only a total of about 4 hours a day out of an 8 hours day being on his feet rather than the full requirements of a 6 hour day. So, the bending he's got to be careful of. Lifting, no overhead work. ??? sustain overhead work. ??? reach around, especially if there's any large amount of weight involved. He can't do that. Those are the things he could do. And I think he could probably do more if he would lose some weight. And if that still didn't work, he could do more ??? fusion.

(R. 374).

The Court acknowledges that the Commissioner's handling of Plaintiff's claim is unfortunate. The first ALJ decision was reversed because there were no record of the ALJ hearing. The second and third ALJ decisions were reversed due to rather egregious, careless,

---

[2]Here, Dr. Newman refers to a spinal fusion surgery, which Plaintiff's doctors had considered as a treatment option. (R. 239).

and plain errors.  Now, this fourth ALJ decision is called in to question by the poor quality of this transcript.  The Court is left to decide whether Plaintiff, after more than a decade of hearings and decisions, has finally received the procedural and substantive safeguards to which he is entitled under the SSA regulations.  The Court's efforts in this matter are obviously frustrated by the condition of the only available transcript of this crucial hearing testimony.  The Court certainly sympathizes with Plaintiff if he is bewildered and appalled by all that has happened in the nearly fifteen years since he filed his application for disability insurance benefits.

Nevertheless, the Court must consider whether ALJ Stewart reasonably relied on this transcript, along with other medical evidence, in determining that Plaintiff is capable of sedentary work, and thus not disabled.  The Court further notes that Dr. Newman's testimony was presented in a hearing before a different ALJ, and so ALJ Stewart was necessarily relying on the same transcript to reach his decision that this Court relies on now to review the basis of ALJ Stewart's findings.  ALJ Stewart did not have the benefit of personally hearing Dr. Newman's testimony.

In determining whether there has been a substantive error, the Court must consider whether the Commissioner's finding in this regard is supported by substantial evidence. 42 U.S.C. § 405(g).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court's primary concern is whether an official transcript, without omissions, would substantially aid Plaintiff or whether the absence of such a transcript in any way prevents fair judicial review.  *Andres v. Bowen*, 870 F.2d 453, 455-56 (8th Cir. 1989); *see also Vanatta v. Barnhart*, 327 F.Supp.2d 1317, 1322-23 (D. Kan. 2004).  In this case, while the transcript is imperfect, this Court notes that it is essentially intelligible, and Dr. Newman's opinion is clear from the transcript.  A reasonable person might rely on this transcript to determine what Dr. Newman opined, despite the occasional omissions.  The Court concludes that the unofficial transcript may constitute substantial evidence supporting

ALJ Stewart's RFC determination. The Court will consider Plaintiff's argument that ALJ Stewart drew unreasonable inferences and conclusions from Dr. Newman's testimony below; this is a separate question from the adequacy of the quality of the transcript.

In determining whether there has been a procedural error, the Court notes the following requirement: "As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g)(sentence three). Plaintiff indicates that Defendant has violated this statutory duty, but provides no argument or analysis on the matter. Furthermore, an administrative law judge has an obligation to make a complete record of hearing proceedings, and must prepare a typed copy of these proceedings in certain circumstances. 42 U.S.C. § 404.951. However, Plaintiff makes no argument regarding the applicability of this regulation. This Court concludes that Defendant has complied with 42 U.S.C. § 405(g) by filing the administrative record with the Court, and that the adequacy of such record is not appropriately challenged under §405(g) in this case. Furthermore, this Court makes no determination regarding Defendant's compliance with 42 U.S.C. § 404.951, as the parties have not presented any argument on this point.

The Court finds that ALJ Stewart did not make any substantive or procedural error in relying on the transcript of Dr. Newman's testimony.

*2. Dr. Newman's Testimony - ALJ Stewart's Inferences*

Plaintiff argues that ALJ Stewart failed to evaluate Dr. Newman's statement that Plaintiff could not sit for a "long" time, and failed to evaluate Dr. Newman's statement that Plaintiff had to be careful when bending.

First, Plaintiff argues that ALJ Stewart failed to evaluate Dr. Newman's statement that Plaintiff could not sit for a "long" time. This argument fails because Dr. Newman never actually said that Plaintiff could not sit for a long time. Rather, in explaining why Plaintiff's ability to stand is limited, Dr. Newman explained, "The muscles that maintain posture, mainly the stomach

7

muscles that protect the spine, fatigue after you're on your feet continuously for a long time or you sit for a long time." (R. 374). However, the essence of Dr. Newman's opinion was that Plaintiff could satisfy the lifting requirements of light work as defined by the SSA regulations, but not the standing requirements of light work as defined by the SSA regulations. (R. 375).[3] Plaintiff's assertion that Dr. Newman opined that Plaintiff had any limitation with respect to sitting takes a statement in Dr. Newman's testimony out of context. Because Dr. Newman never actually said that Plaintiff cannot sit for a long time, ALJ Stewart did not err in failing to consider such a statement.

Second, Plaintiff argues that ALJ Stewart failed to evaluate Dr. Newman's statement that Plaintiff had to be "careful" when bending. Here again, Plaintiff takes Dr. Newman's testimony out of context. Dr. Newman indicated that Plaintiff would need to be careful when bending, while performing light work on his feet up to four hours a day. This comment by Dr. Newman has no direct relationship to the requirement in sedentary work that a claimant be able to bend forward at the waist occasionally. Furthermore, an ALJ need not make a written evaluation of every individual piece of evidence in the record, so long as he builds a logical bridge from the evidence to his conclusions. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). For these reasons, this Court concludes that ALJ Stewart did not err in failing to evaluate Dr. Newman's statement regarding bending.

The Court concludes that ALJ Stewart did not err by failing to evaluate Dr. Newman's testimony.

*3. Opinion of Dr. Engelhard*

Plaintiff argues that ALJ Stewart did not properly weigh the opinion of Dr. Engelhard. In response to a questionnaire, Dr. Engelhard indicated that Plaintiff has a limited ability to sit for prolonged periods, and that Plaintiff could only sit for 30 minutes. (R. 237). It is unclear

---

[3]To quote Dr. Newman from the record: "He could lift a little more than the regulation requires, but he could stand for a little less, according to my opinion." (R. 375).

8

whether this is Dr. Engelhard's determination or Plaintiff's subjective report. An additional question in the questionnaire asked whether Plaintiff's subjective complaints, including limited capacity to sit, are consistent with objective medical evidence. Dr. Engelhard answered "Yes - Discogenic pain can be severe." (R. 238). Also, Dr. Engelhard noted that Plaintiff had a limited range of motion in the spine, in that Plaintiff had to bend his knees when bending forward. (R. 237). Finally, Dr. Engelhard indicated that, in his opinion, Plaintiff could participate in "very light duty work activities." (R. 238). ALJ Stewart noted Dr. Engelhard's opinion that Plaintiff could do "very light duty" work, but did not discuss Dr. Engelhard's other notes about Plaintiff's limited capacity to sit for prolonged periods of time or limited range of motion. (R. 290).

Defendant responds that the record does not make clear that Dr. Engelhard was Plaintiff's treating physician, and that in any event, his notes were almost entirely devoid of clinical findings to support his opinion. First, to address the issue of whether Dr. Engelhard was Plaintiff's treating physician, a treatment note dated March 5, 1999, clarifies that Dr. Engelhard was a treating physician. (R. 239). The record indicates that Plaintiff first saw Dr. Engelhard when he was at Northwestern Medical Faculty Foundation, likely in connection with Plaintiff's worker's compensation claim. (R. 195-202; 239). That claim was settled in December 1998. (R. 234). Later, in March 1999, Plaintiff again met with Dr. Engelhard, this time at University of Illinois at Chicago. (R. 239). These treatment notes indicate that Dr. Engelhard met with Plaintiff on at least two occasions, ordered an MRI, prescribed pain medication, and referred him to his colleague Dr. Wagner to explore surgical options. The questionnaire, though undated, is included in an exhibit that contains only the University of Illinois at Chicago files, which are all from 1999. These files, taken together, demonstrate a treatment relationship during this time period.

When considering the opinion of a treating physician, an ALJ is required to consider whether the opinion is well-supported by acceptable diagnostic techniques, and whether it is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If the opinion is well-supported and consistent with substantial evidence in the record, the ALJ should

give the opinion controlling weight. If the ALJ gives the opinion less than controlling weight, the ALJ must explain what weight he gives to the opinion, based on factors such as length of the treatment relationship and the nature and extent of the treatment relationship. *Id.*

Here, ALJ Stewart pointed out that no treatment provider, including Dr. Englehard, has ever stated that Plaintiff is unable to perform work activity. ALJ Stewart specifically refers to Dr. Englehard's note that Plaintiff is limited to light duty work activity.[4] This effectively indicates that ALJ Stewart concluded that a limitation to sitting for only 30 minutes at a time was not consistent with the substantial evidence in the record, because no treatment provider or medical expert opined that Plaintiff could not work. As such, Dr. Engelhard's notation that Plaintiff could only sit for 30 minutes at a time was not entitled to controlling weight.

Thereafter, ALJ Stewart did not weigh factors such as the length of the treatment relationship and the nature and extent of the treatment relationship. However, this omission does not constitute error, because ALJ Stewart did not reject Dr. Engelhard's opinion as a whole. Rather, ALJ Stewart chose to rely on Dr. Engelhard's more global assessment that Plaintiff was capable of "very light duty work activities," instead of relying on the notation regarding limitations on sitting, which may have merely been Plaintiff's subjective indication of when he might experience pain or discomfort. Plaintiff's request that the Court find error in this analysis would effectively require the Court to reweigh the evidence. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989) (stating the court shall not replace the ALJ's finding with the Court's own assessment of the evidence).

---

[4]See the Table of Contents in the Record at page four for clarification. Dr. Engelhard's questionnaire and treatment notes are labeled "Exhibit 23F" and "Exhibit 9F." As such, when ALJ Stewart cited "Exhibit 9F", he was actually referring to this questionnaire, even though it now has a different exhibit number and page number in the record.

10

The same essential analysis applies to Plaintiff's argument that ALJ Stewart erred in failing to discuss Dr. Engelhard's notation about Plaintiff's limited range of motion in his spine. Dr. Engelhard does not opine how this might affect Plaintiff's ability to work, but Dr. Engelhard's global assessment was that Plaintiff could perform "very light duty work activities." Of course, because Dr. Engelhard's use of this phrase has no direct relationship with how the SSA defines exertional requirements of various jobs, ALJ Stewart could appropriately exercise his discretion in translating Dr. Engelhard's opinion in to an RFC determination. Plaintiff's argument that Dr. Engelhard's notation about limited range of motion might prevent Plaintiff from performing the full range of sedentary work amounts to speculation. In conclusion, ALJ Stewart did not err in concluding that Plaintiff could perform the full range of sedentary work.

The Court concludes that ALJ Stewart did not err in failing to evaluate Dr. Engelhard's opinion that Plaintiff could not sit for prolonged periods or had to bend his knees to bend.

*4. Grid Rule 201.21*

As Plaintiff notes, if ALJ Stewart did not err in concluding that Plaintiff can perform the full range of sedentary work, Grid Rule 201.21 directs a finding on non-disability. 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 200.00(a). In any event, Plaintiff makes no argument that there was any error with respect to VE testimony, which was rather brief, and merely noted the number of jobs in Chicago area that constitute unskilled, sedentary work. (R. 456-57).

**IV. Summary**

Accordingly, this Court recommends that Plaintiff's Motion for Summary Judgment **(#16)** be **DENIED**, and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#20)** be **GRANTED**.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 14th day of March, 2012.

                                                                s/ DAVID G. BERNTHAL
                                                                U.S. MAGISTRATE JUDGE